IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> RICHARD ALLEN KNIGHT, <br><br> Defendant. | 8:21-CR-248 <br><br> ORDER REGARDING DEFENDANT'S OBJECTION TO MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION |

This matter is before the Court for its review of the magistrate judge's Findings and Recommendation, Filing 41, denying Defendant's Motion to Suppress, Filing 19. Defendant timely filed an Objection to the Findings and Recommendation, challenging the magistrate judge's ruling. Filing 44. Pursuant to 28 U.S.C. § 636(b)(1)(C), the Court has conducted a de novo review of the magistrate judge's Findings and Recommendation. The Court concurs in the magistrate judge's factual findings and legal analysis.

## I. BACKGROUND

Defendant, Richard Allen Knight, is charged with possessing child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). Filing 1. His current charges stem from the June 2021 search and seizure of a trailer that was parked at a residence at 4461 Curtis Avenue, Omaha, Nebraska. Katrina Schroder lived in the residence, and Schroder's brother owned the property. Filing 37 at 10. At the hearing before the magistrate judge in this matter, Defendant's probation officer,[1] Officer Brown, testified that Schroder told her sometime after late-April 2021 that Schroder had given Defendant permission to stay in the trailer parked just off of the residence's driveway, but not in the residence itself. Filing 37 at 26. Pursuant to his conditions of supervised

---

[1] Defendant was and is on federal supervised release stemming from a prior conviction for failing to properly register as a sex offender. *See* Case No. 8:17-cr-368.

1

release, however, Defendant was not permitted to reside at the Curtis Avenue address. Filing 37 at 10.

In May of 2021, Detective Templeton of the Omaha Police Department's (OPD's) Child Victim Sexual Assault Unit began investigating Defendant for two sexual assaults of a minor victim. Filing 37 at 29. According to Templeton, the victim of the assaults reported that she was assaulted in a hotel on one occasion and in a mobile home or camper located at a house near a school in Omaha on another occasion. Filing 37 at 30-31. The victim indicated that there were sex toys and camera equipment in the camper in which she was assaulted. Filing 37 at 31. The victim also identified her assailant by name as the Defendant and picked him out of a photo-lineup. Filing 37 at 31.

Detective Templeton testified that he learned Defendant was under federal supervision on June 28 or 29, 2021. Filing 37 at 32. Upon learning Defendant was under supervision, Detective Templeton contacted Defendant's probation officer, Officer Brown, in hopes of obtaining Defendant's current address. Filing 37 at 32-33. Templeton testified that Brown informed him that Defendant would be coming into the United States Probation and Pretrial Office in Omaha, Nebraska on June 29, 2021, and Detective Templeton then obtained a warrant to take a DNA sample from Defendant. Filing 37 at 33.

Officer Brown testified that the owner of the Curtis Avenue residence, Schroder's brother, called Brown on June 28, 2021, and reported that Defendant had been staying in Schroder's residence when Schroder was not there and complained that Defendant was not taking care of the place. Filing 37 at 10, 24. According to Brown, Defendant admitted to her that he had been staying in the residence for several weeks. Filing 37 at 10; Filing 105 at 2; Ex. 5 at 2. On June 29, 2021, Defendant met with Brown in the probation office and, according to Brown, Defendant did not

2

disagree with her allegation that he had been living somewhere he was not permitted to live, in violation of his conditions of supervised release. Filing 37 at 15.

Detective Templeton also attended the June 29, 2021 meeting between Defendant and Brown, during which Templeton took a DNA sample from Defendant. Filing 37 at 16-17, 29. Detective Templeton testified that, during the meeting, Defendant stated that he was staying in the trailer parked at the Curtis Avenue residence, and that Defendant declined to speak with the detective any further concerning the police investigation of the sexual assaults. Filing 37 at 33-34. Defendant was then taken into federal custody for his alleged violations of his conditions of release. Filing 37 at 17. He has remained in custody since his arrest. *See* Docket No. 8:17-cr-368.

On the same day Defendant was arrested, June 29, 2021, Schroder returned home to the Curtis Avenue residence after being released from the hospital. Filing 37 at 18. Officer Brown testified that Schroder called her that day and told Brown that the Curtis Avenue residence was "ransacked and there was drug paraphernalia, phones with young girls on it, and she just wasn't sure what to do." Filing 37 at 18. Brown advised Schroder to call the police. Filing 37 at 18.

Brown further testified that after her conversation with Schroder on June 29, Brown received a call from OPD Officer Foster, who had been dispatched to Schroder's home after Schroder had called police. Filing 37 at 18. Foster testified that when he arrived at Schroder's home, Schroder told him to call Defendant's probation officer, Officer Brown, and Foster did so. Filing 37 at 57-58. Foster testified that Brown told him during their phone call that Defendant was arrested earlier that day in relation to a sexual assault, "and then there was property in the home that had a younger female nude on a cell phone," that may be needed as part of the sexual assault investigation. Filing 37 at 58. Foster also testified that Brown told him she had spoken with Schroder earlier that day, that Defendant had been living in the house, that there was contraband

in the house, and that he should call Detective Templeton. Filing 37 at 79-80. Foster also testified that he had not met Detective Templeton before and that, before his phone conversation with Brown, he was not aware of any sexual assault investigation involving the residence or the Defendant. Filing 37 at 54, 74.

After Foster spoke with Brown, Schroder took him into the house and directed him to the personal property that was left in her home after Defendant had resided in the house without permission, which included methamphetamine, cell phones, and sex toys. Filing 37 at 61. Schroder explained to Foster that Defendant had changed the locks on the residence while Schroder was in the hospital, and though Schroder had previously tried to get Defendant out of the house, he would not leave. Filing 37 at 63-64. While in the house, Schroder first mentioned to Foster the trailer parked just off the driveway, noting that there were phones in the trailer Schroder wanted the police to take. Filing 37 at 63. Schroder also noted that the trailer was trashed and indicated that she had opened the door, looked in, and then came back out. Filing 37 at 63-65.

Schroder then asked Officer Foster if Schroder should unlock the trailer for him. Filing 37 at 66. Foster testified that he understood Schroder to mean she wanted him to look in the trailer, which he agreed to do. Filing 37 at 66-67. Schroder escorted Foster to the trailer. Filing 37 at 67-68. Foster testified that Schroder had twice told Foster the trailer was hers, and Schroder unlocked the trailer with her key and opened the door for Foster. Filing 37 at 67-68. Inside the trailer, Foster saw sex toys, children's clothing and underwear, cameras, a bed, and tapes. Filing 37 at 72-73, 82. Foster then left the trailer, contacted OPD's Child Victim Sexual Assault Unit, and spoke with Detective Liebe. Filing 37 at 71-73. Liebe then contacted Detective Templeton regarding what Foster had found. Filing 37 at 71-73.

4

Detective Templeton testified that Detective Liebe told him responding officers had found drugs, sex toys, and suspected children's underwear in the residence and clothing, camera equipment, and sex toys in the trailer. Filing 37 at 37. Templeton testified that Liebe told him there may be child pornography present. Filing 37 at 37. Templeton then directed that the evidence be booked and that the trailer be towed to impound. Filing 37 at 36. Templeton believed he had probable cause to tow the trailer based on statements from the victim of the sexual assault for which Templeton was investigating Defendant, given that the victim had identified the Defendant by name and photo-lineup and that she had stated she was assaulted in a mobile home or camper located at a house that was near a school in which there was video equipment and sex toys . Filing 37 at 30-31, 49.

Detective Liebe relayed Templeton's directive and told Officer Foster to secure the trailer and have it towed to impound. Filing 37 at 73-75. Officer Foster arranged the tow and generated a report to aide investigators in obtaining a search warrant. Filing 37 at 74-75. Schroder signed a form consenting to the search of her residence and stated officers could "take anything" when she was informed the trailer would be towed. Filing 37 at 76-77. OPD subsequently obtained a warrant to search the trailer on July 7, 2021. Ex. 3. Police obtained a warrant to search the electronic media found in the trailer on July 20, 2021. Ex. 4.

Defendant was indicted on the current charge on September 4, 2021. Filing 1. On December 7, 2021, Defendant moved to suppress evidence discovered as a result of the search and seizure of the trailer. Filing 19. Defendant contends that the warrantless entry, subsequent search, and seizure of the trailer violated his rights under the Fourth Amendment. Filing 19. After a hearing on the matter on April 11, 2022, the magistrate judge found no Fourth Amendment violation stemming from the search and seizure of the trailer, Filing 41, and Defendant objected, Filing 44.

5

Like the magistrate judge, this Court concludes there was no violation of Defendant's Fourth Amendment rights.

## II. DISCUSSION

Defendant contends officers worked together to intentionally bypass Defendant's privacy interests in the trailer as part of their investigation of the sexual assault and to search and seize the trailer. Filing 44 at 1. Defendant also objects to the magistrate judge's conclusion that Schroder could and did consent to officer's seizure of the trailer, and therefore objects to the magistrate judge's conclusion that Defendant's Motion to Suppress ought to be denied. Filing 44 at 1. As set forth below, this Court agrees with the magistrate judge that Officer Foster's initial search of the trailer was justified by Schroder's consent and was not the product of law enforcement intentionally endeavoring to bypass Defendant's privacy interests. Further, the Court agrees that Schroder gave consent for the trailer to be impounded, which justified officers seizing it, though even if consent were lacking, there would be no constitutional injury to Defendant given there was probable cause to secure the trailer and a lack of any meaningful interference with Defendant's possessory interests.

### A. Search of the Trailer

Defendant contends "that Officers made warrantless entry into [Defendant's] residence [*i.e.* the trailer] without a warrant, consent, or exigent circumstances." It is true that Defendant did not consent to the search of the trailer, but Officer Foster clearly had Schroder's consent, and in this instance, Schroder's consent rendered the initial search of the trailer reasonable.

It is well established that a warrantless entry and search may be conducted without constitutional injury where officers have obtained valid consent to conduct the search. *United States v. Amratiel*, 622 F.3d 914, 915 (8th Cir. 2010). A party possessing "common authority over

6

or other sufficient relationship to the premises" stands in a position to grant such consent. *United States v. Matlock*, 415 U.S. 165, 171 (1974); *see United States v. Janis*, 387 F.3d 682, 686-87 (8th Cir. 2004) ("Common authority is a function of mutual use, joint access, and control, and is a question of fact."). A warrantless search is permissible even if a consenting party lacks actual authority, provided that the consenting party demonstrates apparent authority in that there were "facts available [that] would have justified a reasonable officer in the belief that the consenting party had authority over the premises." *United States v. Czeck*, 105 F.3d 1235, 1239 (8th Cir. 1997).

The Court has little trouble concluding that Schroder, who clearly consented to all searches at issue and to officers "tak[ing] anything," demonstrated, at a minimum, apparent authority such that officers could rely on her consent to search trailer. The trailer was in her parents' names, parked at her residence, and she alone was present at her residence and had the keys to the trailer on hand. She noted to the officer on scene multiple times that she had already been in the trailer and twice stated that the trailer was hers, all while indicating her desire that Officer Foster enter and observe the contents of the trailer. No reasonable officer in Officer Foster's position would think Schroder lacked the authority to consent to the search of the trailer. Police reliance on her consent was entirely reasonable given the facts available.

Defendant also contends that law enforcement engineered the scenario in which Defendant would be unable to assert his Fourth Amendment right to privacy and contest the search of the trailer, as he had been arrested the very morning of the search. *See* Filing 44 at 1 ("[Defendant] objects to the magistrate judge's conclusion that officers did not work together in investigating the sexual assault and intentionally bypass [Defendant's] privacy interest in the trailer . . . ."). That contention lacks support in the record, however.

The unrefuted evidence was that Schroder called Defendant's probation officer, Officer Brown, without prompting by anyone, regarding her house being ransacked by Defendant in her absence. Then, in response to Schroder's statements concerning the condition of her house and the items left inside, Brown reasonably recommended that Schroder call the police. OPD Officer Foster was dispatched on Schroder's call with no prior knowledge of the defendant or any sexual assault allegation related to Schroder's address. That Brown also spoke with Officer Foster and informed him of the sexual assault investigation concerning Defendant before the trailer was searched had nothing to do with Schroder repeatedly, and without prompting, saying that the trailer was hers and inviting the officer to look inside. There is no evidence in the record that Defendant's arrest for admitted violations of his supervised release was part of a government conspiracy to get him away from the trailer in order to facilitate a warrantless search. This Court concludes, like the magistrate judge, that the search of the trailer did not violate Defendant's rights.

### B. Seizure of the Trailer

Defendant also challenges the magistrate judge's conclusion that Schroder consented to the trailer being impounded and that she had the authority to do so. Filing 44 at 1. Defendant asserts the seizure of the trailer without a warrant violated his rights. *See generally* Filing 44. The Court again concurs with the magistrate judge, however, in finding there was no violation of Defendant's rights.

As an initial matter, the Court finds that the above analysis concerning Schroder's authority to consent to the search of the trailer applies with equal force to her authority to consent the trailer's removal from her residence by police. Based on the facts known to officers at the time, their reliance on Schroder's consent was reasonable. The record is clear that Schroder was well aware the trailer was to be impounded, and she voiced no objection. To the contrary, she told officers

8

they could "take anything." Thus, there was no need for officers to secure a warrant prior to towing the trailer to impound.

Officers also had probable cause to believe that the trailer contained evidence of a crime and were thus justified in securing the trailer and its contents in anticipation of a warrant. "Where law enforcement authorities have probable cause to believe that a container holds contraband or evidence of a crime, but have not secured a warrant . . . the [Fourth] Amendment . . . permit[s] seizure of the property, pending issuance of a warrant to examine its contents . . . ." *United States v. Clutter*, 674 F.3d 980, 985 (8th Cir. 2012) (quoting *United States v. Place*, 462 U.S. 696, 701 (1983)). Officer Foster had the trailer towed "hands-off" to ensure its contents, which Detective Templeton had determined to include likely evidence of the sexual assault he was investigating, were preserved for further processing once a warrant could be procured. The exigencies of the circumstances, namely the need to preserve evidence police had probable cause to believe was present, further justified the seizure of the trailer. Additionally, because Defendant was and has been in jail since before the trailer was seized, he cannot demonstrate interference with his possessory interests in the trailer or its contents. *See Clutter*, 674 F.3d at 984 (requiring "meaningful interference with an individual's possessory interests" for a seizure in the constitutional sense and finding no such interference where a defendant was not present when a third-party consented to police taking property temporarily while intending to secure a warrant). Thus, the Court agrees with the magistrate judge that Defendant has no valid constitutional complaint with regard to police impounding the trailer and their subsequent search of the trailer and its contents.

## III. CONCLUSION

For the reasons stated above, the Court concurs fully in the magistrate judge's assessment of Defendant's Motion to Suppress, which must be denied. Accordingly,

IT IS ORDERED:

1. Defendant's Objection, Filing 44, is overruled;

2. The magistrate judge's Findings and Recommendation, Filing 41, is adopted;

3. Defendant's Motion to Suppress, Filing 19, is denied; and

4. The Clerk of Court is ordered to terminate the pending motions at Filing 19, Filing 41, Filing 44, and Filing 45.

Dated this 4th day of August, 2022.

BY THE COURT:

Brian C. Buescher
United States District Judge